UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                              )<br>    v.                             )<br>JASON M. NOBLES,              )<br>    Defendant.            ) | Criminal No. 18-10089-NMG |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this Sentencing Memorandum in the above-captioned case, currently scheduled for sentencing on May 7, 2019. For the reasons outlined in this memorandum, the Government believes that a sentence of 235 months' imprisonment, the high-end of the advisory guidelines, is the appropriate sentence in this matter. Following the completion of this sentence, the Government requests that the defendant be on supervised release for a period of 60 months, be ordered to pay restitution to the Santander Bank in Swansea, Massachusetts, and be required to pay a mandatory special assessment of $100.

**I. PROCEDURAL HISTORY**

On January 29, 2019, Jason M. Nobles ("Nobles") pled guilty to a one-count indictment charging him with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d).

**II. FACTS**

The facts, as stated in the Pre-Sentence Report ("PSR"), are largely uncontested.

On February 26, 2018, at approximately 4:55 PM, a white male entered a branch of Santander Bank ("the bank") located in Swansea, Massachusetts. The individual ("the robber") approached a teller, brandished what appeared to be a black semi-automatic firearm, and ordered the tellers to empty their cash drawers. As the tellers complied with the robber's orders, the robber was overheard saying, "Hurry up or I will shoot."

The tellers handed the robber cash from their drawers and the robber exited the bank. Bank employees watched the robber as he approached, entered, and then exited the area in a gray Toyota SUV ("the Toyota").

The tellers who interacted with the robber identified him as a white male, standing at approximately 5'7" to 5'10", and weighing approximately 150—170 pounds. He was wearing a red baseball hat, dark-colored sweatshirt with red stains, dark sweatpants, and white sneakers. He also wore dark sunglasses, a black mask covering the lower half of his face, and white latex gloves. Bank surveillance cameras were operating and functioning on the date of the robbery. They captured images of the robber that were consistent with the descriptions given to law enforcement.

A post-robbery audit determined that the robber had taken $15,048.00 in US currency during the robbery.

Within moments of the robbery, the Swansea Police issued a "Be on the Lookout" ("BOLO") alert for the Toyota. At approximately 5:07 PM, a Rehoboth Police Officer who had received the BOLO observed a gray Toyota operating at a high-rate of speed past him. The Rehoboth Police Officer told his station of his observations, activated his blue emergency lights, and pursued the Toyota. The Rehoboth Police Department dispatcher apprised other Rehoboth officers of the pursuit.

The Toyota continued at a high-rate of speed, using both lanes of travel, failed to stop at stop signs, and almost hit other vehicles and pedestrians. The Toyota collided with the Rehoboth Police Officer's cruiser before coming to a stop.

The operator of the Toyota, identified as Nobles, was removed from the Toyota and transported to a local hospital for minor medical treatment. At the time of his arrest, Nobles was wearing clothing consistent with the clothing worn by the robber of the Santander Bank in Swansea. Law enforcement observed and seized a large amount of US currency from the front pocket of the dark-colored and red-stained sweatshirt Nobles was wearing.

The Toyota was secured and towed to the Swansea Police Department. Later, law enforcement executed a search warrant on the Toyota and seized identification documents confirming Nobles as the owner of the Toyota, $15,042.00 in US currency ($6 fewer than what had been reported as stolen), a Sig Sauer semi-

automatic pellet gun, a red baseball hat, and white latex gloves.

On February 26, 2018, Nobles was arrested on related state charges and detained in state custody. On March 22, 2018, Nobles appeared in U.S. District Court in Boston and was ordered detained.  On January 29, 2019, Nobles pled guilty to one-count indictment charging him with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d).

### III. GUIDELINE ANALYSIS

**A. Offense Level Computation**

¶¶ 21 & 22 Base Offense Level

The Government agrees with Probation's conclusions that Nobles' Base Offense Level is 20, and that a two-level increase is applicable as Nobles robbed a financial institution.

¶ 23 Specific Offense Characteristics

The Government agrees with Probation's conclusions that since a dangerous weapon was "brandished" a three-level increase is applicable.

¶ 26 Adjustment for Obstruction of Justice

The Government agrees with Probation's conclusions that, because the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officers, two additional levels are added.

¶ 27 Total Offense Level

The Government agrees with Probation's conclusions that, the Total Offense Level incorporating the above adjustments is 27.

¶ 28 Chapter Four Enhancements

The Government agrees with Probation's conclusions that Nobles is a Career Offender and thus subject to a corresponding offense level of 34 because the statutory maximum of 18 U.S.C. § 2113(a) and (d) is 25 years. § 4B1.1(b)(3).

¶¶ 29 & 30 Acceptance of Responsibility

The Government agrees with Probation's conclusions that Nobles is entitled to a three-level reduction for acceptance of responsibility.

¶ 31 Total Career Offender Offense Level

The Government agrees with Probation's conclusions that Nobles is a Career Offender and accordingly, his Total Offense Level is 31.

**B. Career Offender Status**

U.S.S.G § 4B1.1(a) provides that an individual shall be designated a Career Offender if: (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least

5

two prior felony convictions of either a crime of violence or a controlled substance. Nobles satisfies these tripartite requirements.

First, Nobles is 37 years-old. Second, Nobles' instant offense, a violation of 18 U.S.C. § 2113(a) and (d), is a felony crime of violence. *United States v. Frates*, 896 F.3d 93, 98-99 (1st Cir. 2018) (holding that a violation under 18 U.S.C. § 2133(a) and (d) qualifies as a "crime of violence")(citing *United States v. Ellison*, 866 F.3d 32, 35 (1st Cir. 2017)). Third, Nobles has two prior felony convictions: (1) for trafficking cocaine, a Class B substance, and (2) for possession with intent to distribute heroin, a Class A drug, (PSR ¶¶ 58 & 63) which are controlled substance offenses under 21 U.S.C. § 841.

¶ 58 Trafficking Class B Substance

On April 18, 2003, Nobles pled guilty in the Bristol County Superior Court to one count of trafficking a Class B substance. He was sentences to six years and one day's imprisonment.

¶ 63 Possession with Intent to Distribute Class A Substance

On July 30, 2010, Nobles pled guilty in the Bristol County Superior Court to one count of possession with intent to distribute a Class A drug. He was sentenced to three years and one day's imprisonment. His sentence was revised on February 21, 2014, to two-and-a-half years and one day.

**C. The Defendant's Criminal History**

¶ 69 The Government agrees with Probation's conclusions that the defendant's criminal history score is 17, which establishes a criminal history category of VI.

¶ 70 The Government agrees with Probation's conclusions that the defendant is a Career Offender, and as a Career Offender his criminal history category is VI pursuant to § 4B1.1(a).

**D. Sentencing Options**

¶ 138 Guideline Provisions

The Government further agrees with Probation that based on a total Career Offender Offense Level of 31 and a criminal history category of VI, the guideline imprisonment range is 188 months to 235 months.

**IV. SENTENCING RECOMMENDATION**

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence. These factors include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public

from further crimes of the defendant, and to provide for the needs of the defendant.

For the reasons detailed below, the Government believes that a sentence of 235 months' imprisonment, the high-end of the advisory guidelines, is fair and just and takes into account the factors enumerated in 18 U.S.C. § 3553(a).

    A. Nobles' Criminal Record is Replete with Violent Crimes and Drug Distribution.

Nobles is a dangerous and prolific life-long career criminal in the literal and statutory context. Nobles' criminal history began in 1993 when he was 11 years-old, and continued unabated throughout his juvenile years. His adult record shows multiple convictions for theft, distributing controlled substances, motor vehicle violations, multiple assault and battery convictions (PSR ¶¶ 37, 41, 45, 46, 48, 49, 61, 66), and a 2113 conviction for kidnapping (PSR ¶67).

His criminal record, spanning over 35 arrests, since becoming an adult, is extraordinary. Nobles has been convicted of crimes multiple times during his adult lifetime, many of which involve violent behavior, involved the use of firearms, and dealt with controlled substances.

On almost every case as a juvenile, Nobles was found in violation of his probation and committed to the Department of Youth Services. As an adult, commencing in 1999, Nobles has

been committed to prison on 11 occasions. These sentences range from between 6 months to over 6 years. Nobles has been found to be in violation of his probation on 6 separate occasions.

Sadly, Nobles' record shows that he is wholly unwilling and unable to refrain from criminal behavior. This final offense, an armed robbery endangering bank employees, the public, and law enforcement, is the apex of a long, involved history of violent and reckless behavior.

B.  Nobles Refuses to Rehabilitate and Remains Incapable of Adjusting Institutionally.

Nobles is a life-long criminal convicted of violent crimes and drug distribution. Moreover, even while an inmate, Nobles continued his pattern of violent and disruptive behavior and drug use (PSR ¶ 58) according to records provided by the Massachusetts Department of Correction while an inmate, he tested positive for opiates, snorted Wellbutrin, tested positive for alcohol, and possessed contraband fermented juices. He also possessed a four-inch sharpened flat-stock and tattoo gun. Nobles also refused to give urine samples, damaged state property, threatened staff, tampered with a locking device, disobeyed direct orders, and joined a gang while in prison.

These behaviors in addition to his pattern of committing violent crimes and drug offenses over and over again, indicate that Nobles has continuously displayed an absolute disregard for

the law and societal norms. Nobles has been sentenced to multiple extended periods of incarceration as well as numerous periods of parole and probation, none of which have curbed his criminal activity in the slightest.

Overall, Nobles' record is replete with violent crimes and shocking instances of habitual re-offending. Nearly every time Nobles has been given the opportunity, he commits more crimes. While it is clear that Nobles' suffers from chronic substance abuse, he has been given several opportunities to reform while in custody and during extended period of probation. He declined those chances and refuses to rehabilitate.

Nobles' record of recurrently committing crimes while on release and receiving aid from drug treatment programs is evidence that he is unwilling and is incapable of abiding by the law. His history of violence with weapons, refusal to refrain from serious criminal acts, and utter disinclination to rehabilitate indicate that he should not be allowed to continue detrimentally affecting society. Society as a whole has paid a price for Nobles' repeated reoffending. Prohibiting him for an extended time from continuing further is likely his best chance at rehabilitation and reoffending.

Though Nobles accepted responsibility for this crime, his repeated offenses and institutional adjustment issues indicate that he is still unwilling and unable to refrain from criminal

behavior despite numerous chances in and out of custody. Having remained unemployed while out of custody, Nobles has not cultivated a life outside of crime. More alarmingly, having remained engaged in criminal activities while *in* custody, Nobles has not cultivated a sense of respect for the law nor work ethic. Nobles does suffer from extensive drug abuse and to-date, no outpatient and other shorter-term custody programs have been effective for him. Nobles would benefit greatly from an extended period of stability. A long-term stabilized program in incarceration may be the only way Nobles is able to address his underlying issues. The Government hopes that such an environment would provide Nobles a path to move forward to rehabilitating into a law-abiding citizen.

    C.    The Instant Offense

On the date of the instant offense, Nobles stole a car from an individual in Rhode Island, drove to Massachusetts, and armed with a dangerous weapon robbed a branch of the Santander Bank. Following the robbery, Nobles escaped in the stolen motor vehicle and led law enforcement on a high-speed chase throughout the Southeastern Massachusetts.  His actions, not only inside the bank, but during this high-speed escape endangered the lives and safety of the public and law enforcement.  The only reason Nobles stopped, was that he was forced to stop by the action of the pursuing law enforcement officers.

**V.     CONCLUSION**

Nobles has continued to refuse to conform his behavior to acceptable societal norms.  This behavior cannot continue. The Government is well within its rights to demand a maximum sentence of 25 years' imprisonment.  The Government however, for the reasons stated herein, requests this Court impose a sentence at the high-end of the advisory guideline range of 235 months' imprisonment, the high-end of the advisory range. Following completion of this sentence, the Government requests that Nobles be on supervised release for a period of 60 months, be ordered to pay restitution to Santander Bank,[1] and a mandatory special assessment fee of $100.

This is a just and appropriate sentence as dictated by Nobles own actions and by Noble's own decisions and is necessary to protect the public and to deter similar conduct from others. The circumstances of this case and Nobles' life-long criminal history warrant this significant sentence

                                        Respectfully submitted,

                                        ANDREW E. LELLING
                                        United States Attorney

                           By:     ***/s/ Kenneth G. Shine***
                                        KENNETH G. SHINE
                                        Assistant U.S. Attorney

---

[1] As law enforcement collected $15,042.00 from Nobles' sweatshirt, restitution should be in the amount of the remaining $6.00 in US currency.

12

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                              */s/ Kenneth G. Shine*
                              KENNETH G. SHINE
                              Assistant U.S. Attorney